RECEIVED
OCT 3 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JAMES K. WILLIAMSON | CIVIL ACTION NO. 05-1135P |
| versus | JUDGE STAGG |
| WARDEN BURL CAIN | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

James K. Williamson ("Petitioner") had a long term relationship with Vickie Ferguson. After they broke up, they began a custody battle over their child. Ms. Ferguson was granted temporary sole custody. Soon afterwards, Petitioner armed himself with a .45 caliber pistol and confronted Ms. Ferguson at the Soap Opera Washateria on Pines Road in Shreveport. He grabbed Ferguson by the hair and said, "If you don't go with me, I'm going to start shooting." Scott Thompson, Ferguson's new boyfriend, together with his brother, Michael, and father, Estal, attempted to disarm Petitioner. Petitioner shot Estal twice in the heart, killing him. Michael survived a bullet in the chest and Scott lost an eye after being shot in the eye, neck and shoulder.

Petitioner dragged Ferguson to his car and began to drive away. Ferguson managed to grab the pistol and throw it out the window. The car soon broke down, and Petitioner forced Ferguson from the car and into a drainage ditch, where he began choking her. A passing motorist armed with a gun threatened to shoot Petitioner if he did not release

Page 1 of 11

Ferguson. Petitioner told the man to "go ahead, I've already shot three people today." Petitioner nonetheless released Vickie and ran into nearby woods. He was arrested the next day and indicted for the first degree murder of Estal, a charge that carried a potential death sentence.

Petitioner was convicted of first degree murder but escaped the death penalty and received a life sentence. The conviction was affirmed on direct appeal. State v. Williamson, 671 So.2d 1208 (La. App. 2d Cir. 1996), writ denied, 679 So.2d 1380 (La.), but this court granted habeas relief and vacated the conviction based on a finding that Petitioner had been denied his right to self-representation under Faretta v. California, 95 S.Ct. 2525 (1975). See Williamson v. Warden, 98 CV 1949. The state retried Petitioner but on a lesser charge of second degree murder. Petitioner represented himself and was again convicted and again received a life sentence. The conviction and sentence were affirmed on direct appeal. State v. Williamson, 805 So.2d 1235 (La. App. 2d Cir. 2002), writ denied, 836 So.2d 94 (La. 2003).

Petitioner then pursued a post-conviction application. He urged that the trial judge had erred by communicating with a juror and a witness outside Petitioner's presence. The state courts denied relief, and Petitioner now seeks federal habeas relief on that single issue. It is recommended, for the reasons that follow, that the petition be denied.

## State Court Proceedings

Petitioner's post-conviction application was supported by a two-page memorandum that contained little detail. Petitioner alleged that the trial judge violated his Fourteenth Amendment right to a fair trial when he "communicated with a state witness, and a juror, outside the presence of the pro se defendant." Petitioner stated that he learned during the trial that a state witness and a juror had communicated outside the courtroom. He represented that he had informed the judge of the communication and moved for a mistrial. The trial judge, Petitioner said, conducted interviews of the witness and the juror. Petitioner complained in his post-conviction application that the judge erred by conducting an off-the-record conference outside Petitioner's presence rather than an open hearing. Petitioner cited page 77 of the transcript from September 12, 2000. Tr. 572, 580-81.

The trial court denied the application without a hearing. The judge faulted Petitioner for not identifying the witness and juror allegedly involved, and he characterized Petitioner's assertions as conclusory and lacking in any factual foundation. Tr. 585-86. The state appellate court denied a writ application based on findings that Petitioner "failed to state with particularity the factual basis of his allegations" and that Petitioner had "only made general allegations." The record presented to the appellate court was "void of any court minutes or transcripts to support [Petitioner's] claim. Tr. 617. The Supreme Court of Louisiana denied the writ without comment. Tr. 618.

This court does have a complete record before it with a transcript of the trial. It shows, on the page that Petitioner cited to the trial court, the following events:

THE COURT: Ladies and gentlemen, let me ask to you step in the back just a moment, please.

(JURY LEAVES)

THE COURT: All right. Mr. Williamson, you have a request.

MR. WILLIAMSON: I would like to know if this is true, if she talked to her.

THE COURT: All right. Your request was and I have a note –

MR. WILLIAMSON: I want to know –

THE COURT: Excuse me. Don't cut me off. Hold on. You have a note the reads excused third juror, I believe that says jury but juror, she was talking to this witness, white shirt, back row. So your request is to have the juror –

MR. WILLIAMSON: It is not my request. That's the note I got, somebody sent to me. I want to know if she did talk to her.

THE COURT: All right. For the record I did have a conversation with Mrs. Barrett, number nine. She indicated to me that she

was standing with the witness and the bailiff was in the area —

MR. WILLIAMSON: No. I move for a mistrial, Your Honor.

THE COURT: Let me finish, okay. She had the witness tie a string on her sleeve. I asked her if she had any conversation with the witness. She said no and they did not discuss the case. I asked her if she could be fair and impartial regardless of what happened and she said that she could. She did not know that the person that tied her string was a witness and there were no further discussions or conversation about the case. All right. And you are asking for a mistrial?

MR. WILLIAMSON: Your Honor, I ask that jury be sequestered because I knew this type of thing would happen. I move for a mistrial. The jury is tainted.

THE COURT: What's the State's position.

MR. KING: That ludicrous. I don't think it requires a response.

MR. WILLIAMSON: A juror talking to a witness doesn't require a response?

THE COURT: Even if she was talking to the witness that's not necessarily grounds for a mistrial or any grounds to have the juror removed. The issue is whether or not there was a discussion about the case which there was not. Or is there any relationship between the juror and the witness and whether or not the juror can be fair and impartial regardless of what took place –

MR. WILLIAMSON: From –

THE COURT: Don't cut me off. There is insufficient grounds to grant the mistrial or to have the juror removed for any reason and your request is hereby denied. All right. Is there anything else?

MR. WILLIAMSON: I just make my objection noted.

THE COURT: So noted for the record.

MR. KING: Nothing else from the State, Your Honor.

THE COURT: Who is your next witness?

Tr. 381-83.

**Analysis**

The State urges that the claim is procedurally barred because Petitioner did not make a contemporaneous objection to the way the trial court handled the issue, nor did Petitioner

raise the issue on direct appeal. Those are procedural defenses that could provide a procedural bar to federal habeas review *if* the last reasoned state court decision clearly and expressly relied upon those procedural rules to reject the claim. See Coleman v. Thompson, 111 S.Ct. 2546, 2555 (1991); Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991); and Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997). The last reasoned ruling did not clearly and expressly rely on those reasons to reject the claim, so the procedural bar defense is not available on those grounds. The state also urges that Petitioner's failure to provide adequate details to the state courts to support his claim gives rise to a procedural bar defense. There is possible merit in this argument, but the undersigned believes that the safer course in this instance is to address the habeas claim on the merits.

The claims presented in this petition are properly reviewed under 28 U.S.C. § 2254(d)(1). That statute provides that a federal court may not grant habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court (1) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided the case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1519 (2000).

Petitioner has not identified any Supreme Court decision on which a claim for relief could be based under this clause.

Under the "unreasonable application" clause — the clause that applies to most claims — a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the State court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the State court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).

It appear that the closest the Supreme Court has come to examining the issues presented in this case was in U. S. v. Gagnon, 105 S.Ct. 1482 (1985). The facts were significantly different from those in this case, but the principles set forth in the case are certainly relevant. The four defendants in that case were represented by counsel. A bailiff entered the courtroom during proceedings that were being held outside the presence of the jury and told the judge that one of the jurors had expressed concern because he had noticed Mr. Gagnon sketching portraits of the jury. Gagnon's attorney admitted that Gagnon (an artist) had been sketching jurors, and the judge ordered that the practice stop. Gagnon's lawyer suggested that the judge question the juror to make sure the sketching had not prejudiced the juror against Gagnon. The judge stated that he would talk to the juror in chambers, and no defendant objected. The judge later requested the bailiff to bring Gagnon's counsel to chambers, but none of the other three attorneys and none of the four defendants were present. A transcript of the proceeding was later made available to all parties.

The Court stated that the constitutional right to presence is rooted to a large extent in the Confrontation Clause but is protected by the Due Process Clause in some situations

where the defendant is not actually confronting witnesses or evidence against him. Gagnon, 105 S.Ct. at 1484. In this case, there was no testimony or evidence presented during the conference between the trial judge and the juror that was used against Petitioner, so the Confrontation Clause was not violated in this case.

The due process right to be present arises if a defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. The defendant's presence "is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id., quoting Snyder v. Massachusetts, 54 S.Ct. 330 (1934). The Gagnon court found that the presence of the four defendants and their lawyers at the in-camera discussion was not required to ensure fundamental fairness or a reasonably substantial opportunity to defend against the charge. The defendants, said the Court, could have done nothing had they been at the conference and would have gained nothing by attending. Id. at 1484-85.

In this case, Petitioner was not present during questioning and no transcript of the conversation was made available to Petitioner. But the judge did report the substance of his conversation with the juror to the parties. Notably, Petitioner did not (at trial) object to the trial judge conducting the interview outside his presence. Rather, he moved for a mistrial on the grounds that the jury was "tainted" by the communication despite the judge hearing from the juror that the communication was innocent and not about the case. Petitioner has not demonstrated a violation of the principles set forth in Gagnon and certainly has not shown, as is required for habeas relief, that the state court's denial of the claim was an objectively unreasonable application of Gagnon.

Finally, habeas review would not be available unless the ex parte communication between the judge and a juror had a prejudicial effect on the defendant and rendered the trial fundamentally unfair. Dunkins v. Dretke, 2004 WL 1585910, *12 (N. D. Tex. 2004), citing

Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004). A proceeding is fundamentally unfair if there is a reasonable probability that the outcome might have been different had the proceeding been properly conducted. Dunkins, supra. There is no reason to believe that, had Petitioner been present at the judge's inquiry of the juror about her brief communication with a witness, the result of the trial would have been different. There was considerable evidence of guilt and no hint of evidence that any juror was unduly influenced by ex parte communication with the judge or communication with a witness.

Petitioner also asserted in his post-conviction application that the trial judge communicated with a state witness, but there has been no evidence presented or facts articulated to support that suggestion.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied and that Petitioner's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 27th day of October, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE